# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHAEL F. SCHALLER,**
**DAWN M. SCHALLER**
On Behalf of themselves
and All Others Similarly Situated

       PLAINTIFF,

Case No. 17-    CH

Hon.

**PROPOSED CLASS ACTION**

V.

**ORLANS, P.C.** fka **ORLANS ASSOCIATES, P.C.**

       DEFENDANT.

_____/

## CLASS ACTION COMPLAINT AND JURY DEMAND UNDER MCR 3.501

NOW COMES Plaintiff, **MICHAEL F. SCHALLER and DAWN M. SCHALLER**

("Plaintiff" or "Schaller") by and through counsel, The Law Offices of Brian P. Parker, P.C., and

brings this PROPOSED CLASS on behalf of herself and all others similarly situated against the

Defendants ORLANS PC, fka ORLANS **ASSOCIATES, P.C.  fka Orlans Associates, P.C.**

("Defendant" or "Orlans") alleging the following specific ACTUAL and STATUTORY damages

per class member ( for the last SIX YEARS) because of Defendant's continuing violations of

The Regulation of Collection Practices Act (RCPA), codified at MCL 445.251 et seq. and the

Michigan Occupation Code ("MOC"), MCL 339.901 et seq, and the Fair Debt Collection

Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA")under MCR 3.501(A)(5) and states:

## I.  PRELIMINARY STATEMENT REGARDING THIS CASE

1.      Defendant ORLANS is foreclosing on SCHALLER and CLASS MEMBERS while publicizing their private debt information through forms created by non-attorney legal processors and foreclosure specialists from eVantage for the Orlans P.C law firm and then using that false information to collect on the underlying debt and provide the same information to the Detroit Legal News for publishing the private debt information online and throughout the State of Michigan in violation of the RCPA and MOC while collecting on the debt using a communication that fails to provide the ***Mini-Miranda*** of the FDCPA required after the initial communication to homeowners.

2.      Orlans is violating Michigan law by commingling activities of collection activities, real estate and attorney activities in violation of MCL 901.915a et seq. as the foreclosure process is performed by "legal processors" and "foreclosure specialists" at an eVantage Services Inc business under the same roof as the Orlans P.C. law firm.

3.      Plaintiffs are informed and believe, and on that basis, allege, that the Defendants have a policy and practice of using eVantage documents and employees to send consumers, such as Plaintiffs, computer-generated, mass-produced letters – in the form of the Orlans letter at **Exhibit 1** and Public Notices like **Exhibit 2**-- ***without any meaningful attorney review or involvement*** prior to the mailing of those letters in violation of 15 U.S.C. §§ 1692e (3) and 15 U.S.C. §§ 1692e (10). See **Exhibit 8**, eVantage website.

4.      Plaintiff seeks statutory, actual damages and equitable and injunctive Relief in stopping Defendant Orlans from creating "Public Notices" and providing them to news outlets that then sell the information to target marketers. **See Exhibit 5 which is are example of the companies that pay for reports to immediately contact and offer homeowners relief from foreclosure**.

## II.  CASELAW AND CONSUMER STATUTES REGARDING THIS CASE

### a.      The Michigan Foreclosure Statute

5.    Under Michigan's Foreclosure Statute at MCL 600.3212:

**600.3212 Notice of foreclosure by advertisement; contents.**

Every notice of foreclosure by advertisement shall include all of the following:

(a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.
(b) The date of the mortgage and the date the mortgage was recorded.
(c) The amount claimed to be due on the mortgage on the date of the notice.
(d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.
(e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.
(f) A statement that if the property is sold at a foreclosure sale under this chapter, under section 3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

6.    Orlans is advertising Class members' private debt information and selling Michigan consumers' homes through a Mortgage Foreclosure Sale Notice (Public Notice) (without the Federally required Mini Miranda (THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE-Exhibit 1) as a means to force payment of the underlying debt. **Please see Exhibit 2** (Public Notice) and **Exhibit 3** which are recent Federal Opinions detailing that the Public Notice is a communication under the FDCPA. *Gray v Trott & Trott, P.C 16-cv-00237*, *Melissa Thompke v Fabrizio & Brook, P.C.,* Case # 10369, *Salewske v Trott & Trott P.C.* No. 16-cv-13326, 2017 U.S. Dist. LEXIS 104681, at *1 (E.D. Mich. July 7, 2017) and *Thebert v Orlans & Associates, P.C.*, Case # 16-14341.

> **b.    The RCPA**

7.    The State of Michigan's Regulation of Collection Practices Act (RCPA) prohibits any "regulated person" from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt," Mich. Comp. Laws § 445.252(e), and from

"[m]isrepresenting in a communication with a debtor [either] [t]he legal status of a legal action being taken or threatened [or] [t]he legal rights of the creditor or debtor," Mich. Comp. Laws § 445.252(f). The RCPA defines the term "regulated person" to mean "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name." *MARTIN v. TROTT LAW, P.C.***,** Case No. 15-12838 (July 26, 2016).

8.      The RCPA prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. "The RPCA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard of *Kistner*, 518 F.3d at 441. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)).

9.      Defendant is a regulated agency under the RCPA. See *Misleh* v *Timothy E. Baxter & Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp. 2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co.,* LLC, 886 F. Supp. 2d 591 - Dist. Court, ED Michigan 2012.

10.     "Person" means an individual, sole proprietorship, partnership, association, or corporation. Defendants are regulated persons under § 445.251(g)(xi). Defendants are violating the following RCPA subsections:

11.     **445.252 Prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau; and

(b) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt; and

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

(m) Bringing to public notice that the consumer is a debtor, except with respect to a legal proceeding which is instituted.

(n) Using a harassing, oppressive, or abusive method to collect a debt

(q) Failing to implement a procedure designed to prevent a violation by an employee.

> **b.    The MOC**

12.    The Michigan Occupational Code (MOC), MCL 339.901 et seq. governs the conduct of collection agencies and their managing agents. The MOC defines a "collection agency" in pertinent part as "a person that is directly or indirectly engaged in collecting or attempting to collect a claim owed or due or asserted to be owed or due another. . . ." M.C.L. § 339.901(b).

13.    "Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

14.    "Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium. Defendants are communicating with Michigan consumers through letters and by lawsuits. See Defendants' own lawsuits against debtors in Michigan alleging this.

15.     "Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt. Plaintiff is a consumer under the MOC.

16.     The MOC's reference to "[a]n attorney handling claims and collections on behalf of a client and in the attorney's own name," is better understood as encompassing *both* attorneys who handle claims and collections on behalf of a client *and* attorneys who seek to collect a debt owed to themselves or their firms. *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 - Dist. Court, ED Michigan 2011.

17.     Even if the person, corporation, entity or business such as Defendants is not required to be licensed under MCL 339.901 et seq. the MOC does require Defendant are subject to the "other requirements that regulate collection practices" under MCL 339.904(2).

18.     Defendant Orlans is are violating the following MOC subsections under MCL 339.915:

**339.915 Licensee; prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or the stationery of a credit bureau unless it is disclosed that it is the collection department of the credit bureau.

(b) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

(f) Misrepresenting in a communication with a debtor any of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property.

(m) Bringing to public notice that the consumer is a debtor, except with respect to a legal proceeding which is instituted.

(n) Using a harassing, oppressive, or abusive method to collect a debt.

(q) Failing to implement a procedure designed to prevent a violation by an employee.

19.     Defendant Orlans is violating the following MOC subsections under MCL 339.915a:

**339.915a**

(a) Listing the name of an attorney in a written or oral communication, collection letter, or publication.

(b) Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another.

(c) Sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender.

(d) Employing or retaining an attorney to collect a claim. A licensee may exercise authority on behalf of a creditor to employ the service of an attorney if the creditor has specifically authorized the collection agency in writing to do so and the licensee's course of conduct is at all times consistent with a true relationship of attorney and client between the attorney and the creditor. After referral to an attorney, the creditor shall be the client of the attorney, and the licensee shall not represent the client in court. The licensee may act as an agent of the creditor in dealing with the attorney only if the creditor has specifically authorized the licensee to do so in writing.

(g) Advertising or threatening to advertise for sale a claim as a means of forcing payment of the claim, unless the collection agency is acting as the assignee for the benefit of creditors or acting under an order of a court.

**339.918**

 (2) If the consumer notifies the collection agency in writing, within 30 days after receiving the written notice, that the debt, or any portion of the debt, is disputed, collection of the debt or any disputed portion of the debt shall cease until the collection agency obtains verification of the debt and a copy of the verification or judgment is mailed to the consumer by the collection agency. Verification of the debt or any disputed portion of the debt shall include the number and amount of previously made payments and the name and address of the original creditor, if different from the current creditor, or a copy of the judgment against the debtor.

> **b.     The FDCPA**

20.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on

behalf of another. The United States Congress has found abundant evidence of the use of abusive,

deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

21.     The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Sixth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008).

22.     In applying the "least sophisticated consumer" standard, the Sixth Circuit has adopted the "more than one reasonable interpretation standard." *Kistner*, 518 F.3d at 441. Under that approach, a collection letter can be "deceptive" if it is open to "more than one reasonable interpretation, at least one of which is inaccurate." Id. (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). "[T]he 'more than one reasonable interpretation' standard is applicable to the entirety of § 1692e as a useful tool in analyzing the least sophisticated consumer test." Id.

23.     The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir. 1999); *See also Kistner*, 518 F.3d 433 (the law firm's owner may also be individually liable).

-8-

24.     ORLANS is engaged in the business of using the mails and telephone to collect consumer debts originally owed to others, including residential mortgage debts on behalf of mortgage servicers and banks. See *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453. ORLANS becomes involved with these mortgage debts after they considered delinquent or in default.

25.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1)-(16). Among these *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

26.     To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited in this section are the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f (1).

27.     Among the *per se* violations prohibited by the FDCPA is 15 U.S.C. § 1692c(b):

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, *a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector*.

12.             15 U.S.C. § 1692g provides:

### § 1692g. Validation of debts

(a)    Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

**(1) the amount of the debt**;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b)    **DISPUTED DEBTS**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

11.    The RCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. "The RPCA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard of *Kistner*, 518 F.3d at 441. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)).

13.    15 U.S. Code § 1692e - False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(**11**)The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose*, and the failure to disclose in subsequent communications that the communication is from a debt collector*, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

14.    Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)), rev'd on other grounds sub nom. *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016).

15.    The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, RCPA and MOC and all other common law or statutory regimes.

### III. PARTIES

20.    Plaintiff is a consumer and natural person and at all times relevant to this complaint, resided in the City of Clarkson, County of Oakland, State of Michigan.

21.    Located in the City of Troy, Oakland County and State of Michigan, Orlans, P.C. ("ORLANS") is a mortgage foreclosure law firm engaged in the business of using the mails and telephone to collect consumer debts originally owed to others, including residential mortgage debts. Mortgage foreclosure is debt collection under the FDCPA See *Glazer v. Chase Home*

*Finance LLC*, 704 F. 3d 453.

22.     Defendant Orlans is a regulated person under the RCPA regardless of whether the firm's

collection activities were carried out "in its own name" or on behalf of its clients. *Ward v. G.*

*Reynolds Sims & Assoc.*, No. 12-12078, 2013 WL 364012 (E.D. Mich. Jan. 30, 2013); *Newman v.*

*Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012); *Baker v. Residential Funding Co.,*

*LLC*, 886 F. Supp. 2d 591 (E.D. Mich. 2012); *Misleh v. Timothy E. Baxter & Associates*, 786 F.

Supp. 2d 1330 (E.D. Mich. 2011); *McKeown v. Mary Jane M. Elliott P.C.*, No. 07-12016, 2007

WL 4326825 (E.D. Mich. Dec. 10, 2007).

23.     Non-Party eVantage Services, Inc. is part of the Orlans Group and shares the same office

stated on the Orlans website regarding its founder, Linda Orlans at **Exhibit 4**:

Orlans Group develops creative solutions for real property transactions for sophisticated clients in
36 states and employs over 500 professionals.

Ms. Orlans is Founder and Principal of Orlans Group, which is comprised of Orlans Associates, PC,
Orlans Moran PLLC, Atlantic Law Group, eTitle, eVantage, eAMC, and Towne Auction. All of the
Orlans Group firms are Certified Women's Business Enterprises.

24.      Defendant Orlans is a debt collector under the FDCPA. Mortgage foreclosure is debt

collection under the FDCPA See *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453. **Please see**

**the Federal Foreclosure Opinions at Exhibit 3 and Orlans' s website at Exhibit 4 (showing**

**commingling of debt collector, real estate departments, titling companies and attorneys in**

**the same office sharing the same waiting area**.

**CORPORATE HEADQUARTERS**
1650 West Big Beaver Road
Troy, MI 48084 Phone
Phone:  (248) 502 1519
Email: info@evantageservices.com

Please see **Exhibit 8**, eVantage Website.

25.     The alleged debt being collected by ORLANS is a "debt" as defined by 15 U.S.C. §1692a

(5). The alleged mortgage debt is a "consumer debt" as defined by the RCPA/MOC under MCL

445.251(a)/MCL 339.901(a).

26.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15

U.S.C. § 1692a (3). Plaintiff is, at all times relevant to this complaint, a "consumer" as that term

is defined by the RCPA under MCL 445.251(d) and the MOC under MCL 339.901(f).

27.     ORLANS is, at all times relevant to this complaint, is a "regulated person" as that term is

defined by the RCPA and the MOC.

28.     Defendant is also a collection agency under the MOC as Orlans' collection activities are

not confined or related to the operation of a business other than a collection agency as stated on

the Orlans' Website:

### LEGAL SERVICES SIMPLIFIED

"Our clients are at the center of all that we do."

– Julie Taylor Moran, Senior Executive Counsel

Orlans PC pioneers legal simplicity as one of the nation's preeminent and largest women-owned
law firms, combining process efficiency with an experienced team of attorneys to provide legal
services to developers, lenders, government agencies and other real estate investors. The firm
specializes in default mortgage services, secured and unsecured asset recovery, including auto
bankruptcy and replevin, home retention/loss mitigation, legal compliance, foreclosure,
commercial and residential settlement services, title claims and curative, bankruptcy, appellate
work, eviction, and related legal and litigation matters. Orlans ensures simplified and successful
outcomes to the most complex legal processes.

29.     Defendant ORLANS is a regulated person and or collection agency under the RCPA

regardless of whether the firm's collection activities were carried out "in its own name" or on

behalf of its clients. *Ward v. G. Reynolds Sims & Assoc.*, No. 12-12078, 2013 WL 364012 (E.D. Mich. Jan. 30, 2013); *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012); *Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591 (E.D. Mich. 2012); *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011); *McKeown v. Mary Jane M. Elliott P.C.*, No. 07-12016, 2007 WL 4326825 (E.D. Mich. Dec. 10, 2007).

## IV. JURISDICTION & VENUE

30.     Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337.

31.     Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

32.     The factual basis of the RCPA/MOC claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

33.     The MOC and RCPA claims are not unique beyond any allegations against Orlans under the FDCPA.

34.     Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

35.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

## V. FACTS CONCERNING eVANTAGE, THE COLLECTION NOTICES AND THE MORTGAGE FORECLOSURE SALE NOTICE

36.     Under the guise of following the State Foreclosure Statue, Defendant ORLANS is violating

State and Federal collection laws and breaching the Plaintiff homeowner's right to privacy in publicizing consumers' private debt information in Public Notices to the internet, newspapers and the Detroit Legal News beyond what is required under the State Foreclosure law at MCL 600.3212 with consumers suffering mental distress and embarrassment, damage to their reputations in the community as everyone now knows Plaintiff is in default of a debt and the amount and that they are being pursued for with the Defendant breaching the homeowners' privacy rights under both the statutory and actual damages provisions of the FDCPA, MOC and RCPA. **Please see Plaintiff's Affidavit at Exhibit 6**.

37.    Sometime prior to July 27, 2017 Plaintiff allegedly incurred a financial obligation on a mortgage that ORLANS seeks to foreclose upon on September 19, 2017. **Please see the Public Notice at Exhibit 2**.

38.    The mortgage debt arose out of a transaction in which the money, property, insurance, or services are the subject of the transaction that are primarily for personal, family, or household purposes.

39.    As part of the ORLANS's foreclosure process, a separate department and company titled eVantage Services Inc's foreclosure specialists and legal processes do the work of attorneys in creating the foreclosure paperwork and collection communications that Defendant sends Michigan homeowners similar to **Exhibit 1** and follows up by posting Mortgage Foreclosure Sale Notices ("Public Notices") on the internet, county buildings and newspapers in **Exhibit 2** that contain the same private debt information from **Exhibit 1** in violation of the FDCPA, RCPA and MOC.

40.    The letter created by eVantage for Orlans P.C. at **Exhibit 1** states that the homeowner can dispute the debt and seek verification of the debt amount in writing along with calling Orlans

-15-

for a Reinstatement amount prior to the Sheriff Sale. Mr. Schaller sent the dispute and verification letter and sought a Reinstatement amount with no success. **Please see Exhibit 7**.

41.     On August 18, 2017 through September 8, 2017, Defendant ORLANS started posting a Public Notice of an impending Sheriff Sale of the property for September 19, 2017 in the Detroit Legal News and on Plaintiff's door that publicized the Plaintiff's personal mortgage debt information throughout the State of Michigan. **Please see Exhibit 2**.

42.     Seeking to foreclose on a home by selling the underlying debt in a Sheriff Sale and publishing the Sheriff Sale in a Mortgage Foreclosure Sale Notice (Public Notice) is considered debt collection. "First, the Court relied upon *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453 (6th Cir. 2013) to reach the conclusion that the notice of sale was a communication made for the purpose of obtaining payment on the underlying debt." *Gray v Trott & Trott, P.C.* Case Number #16-00237 W.D.Mich. (January 19, 2016). **Please see Exhibit 3**.

43.     Though the posting of a Public Notice like at **Exhibit 2** is considered a subsequent collection communication under *Glazer*, *Gray*, *Salewske*, *Thompke* and *Thebert*, there was no mandatory Mini Miranda (**THIS COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**) notice included with the Public Notice in violation of 15 U.S. Code § 1692e(11), (*the failure to disclose in subsequent communications that the communication is from a debt collector*.).

44.     On forms and information created by eVantage, ORLANS posted the private debt information in the Detroit Legal News and on the Internet for the purpose of advertising the sale of the home to pay off the underlying debt. Please see **Exhibit 2**.  Please see the Federal Opinions at **Exhibit 3** showing this to be collection activity.

45.     The Public Notice went beyond the requirements of the Michigan Foreclosure Statute in

stating that:

a.      that a Default has been made in the conditions of a certain mortgage by the SCHALLERS
when the statute does not require that a Default should be mentioned;

b.      stated a due date and payment amount: "on which mortgage this claimed ***to be due at the
date hereof*** the sum of Three Hundred Seventeen Thousand Nine Hundred Fifteen and 79/100
Dollars ($317,915.79); and

c.      placed the address of the SCHALLER home on the Public Notice when all that is
required is "A description of the mortgaged premises that substantially conforms with the
description contained in the mortgage;" and

d.      the Public notice is a communication directed to the SCHALLERS by stating, "IF YOU
ARE NOW ON ACTIVE MILITARY OR HAVE BEEN IN THE PRIOR YEAR, PLEASE
CONTACT OUR OFFICE AT 248-502-1400."

e.      advertising that the home is being sold as a means of forcing payment of the underlying
debt.

Mortgage
First Published: August 18, 2017 Last Published: September 8, 2017 Published
Sale Date: September 19, 2017
10325 Reese Rd, Independence Twnshp, 48348-1863, Oakland County
Name: Michael F. Schaller
Orlans PC Attorneys for Servicer P.O. Box 5041 Troy, MI 48007 IF YOU ARE
NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR ONE
YEAR, PLEASE CONTACT OUR OFFICE AT 248-502-1400. MORTGAGE
SALE - Default has been made in the conditions of a mortgage made by
Michael F. Schaller, Dawn M. Schaller, husband and wife, to Fifth Third
Mortgage Company, Mortgagee, dated May 15, 2007 and recorded June 6,
2007 in Liber 39213, Page 831. Said mortgage is now held by Citibank, N.A. as
Trustee for GSAA Home Equity Trust 2007-8, by assignment. There is claimed
to be due at the date hereof the sum of Three Hundred Seventeen Thousand
Nine Hundred Fifteen and 79/100 Dollars ($317,915.79), including interest at
7.75% per annum.

**Please see Exhibit 2**.

46.     The Letter at **Exhibit 1** and Public Notice at **Exhibit 2** are considered as "communications"

to the debtor Plaintiff as defined by the MOC 339.901(d), 15 U.S. Code § 1692a(2) and RCPA at

MCL 445.251(C).

47.     As Plaintiff understood the Letter at **Exhibit 1,** upon receiving it as would the least sophisticated consumer, the debt collection process has entered into a phase where ORLANS will begin to use legal procedures established by foreclosure law and ORLANS attorneys to collect the mortgage debt under *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

48.     The letter was created by a non-legal entity, eVantage Services Inc. for Orlans P.C, a law firm. In the Format of the Letter at **Exhibit 1,** Defendant Orlans P.C. is representing to the homeowner that the law firm has been retained to collect the debt through foreclosure proceedings.  Plaintiff understood the Letter upon receiving it, as would the least sophisticated consumer, a debt collector letter is also coming from a law firm, signed by the Foreclosure Department. The letters also state that ORLANS is the creditor's attorney. The letter Misrepresents and Confuses the homeowner as to who is pursuing the debt and why.

49.     The letters at **Exhibit 1** are part of computer generated, mass produced communications from eVantage, masquerading as a debt collector, sent to homeowners facing foreclosure by ORLANS on a Lawyer Letterhead  and representing as retained by the creditor whose attorney is ORLANS. However, the letters and over communications are created by "legal processors" in other non-legal departments such as eVantage with no meaningful involvement by Orlans attorneys in violation of 15 U.S. Code § 1692e(3) and (10).

50.     Defendant Orlans appears to be combining the activities of legal and non-legal departments like eVantage Services Inc. in the communications to consumers, all under the same roof and sharing the same offices and waiting area at **Exhibit 1 and Website at Exhibit 4**. Please see Exhibit 6 showing eVantage is located at the same office as Orlans at 1650 W BIG BEAVER RD TROY  MI 48084.

51.    The next part of the foreclosure process after ORLANS sends out its initial dunning letters is the setting of the actual Notice of Mortgage Foreclosure Sale with a Public Notice placed in county buildings, the internet, the Detroit Legal news and on the door of the homeowner for all to see. **Please see the Public Notice at Exhibit 2**.

52.    The purpose of the Public Notice is to sell the home to pay off the mortgage when the Public Notice states how much debt is owed and "***claimed to be due*** "and that Attorneys are seeking to sell the home to pay off the underlying debt. **Please see Exhibit 2**.

There is claimed to be due at the date hereof the sum of Three Hundred Seventeen Thousand Nine Hundred Fifteen and 79/100 Dollars ($317,915.79), including interest at 7.75% per annum.

53.    In violation of the FDCPA, MOC and RCPA, the private debt information, pursuit by attorney collectors, the address of the homeowner and the fact that the debt is in default is posted to public notices on the internet, Detroit Legal News, county buildings and homes like **Exhibit 2** throughout the county even though the Michigan Foreclosure Statute does not require the publication of such information.

Mortgage
First Published: August 18, 2017 Last Published: September 8, 2017 Published Sale Date: September 19, 2017
10325 Reese Rd, Independence Twnshp, 48348-1863, Oakland County Name: Michael F. Schaller
Orlans PC Attorneys for Servicer P.O. Box 5041 Troy, MI 48007 IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR ONE YEAR, PLEASE CONTACT OUR OFFICE AT 248-502-1400. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by Michael F. Schaller, Dawn M. Schaller, husband and wife, to Fifth Third Mortgage Company, Mortgagee, dated May 15, 2007 and recorded June 6, 2007 in Liber 39213, Page 831. Said mortgage is now held by Citibank, N.A. as Trustee for GSAA Home Equity Trust 2007-8, by assignment. There is claimed to be due at the date hereof the sum of Three Hundred Seventeen Thousand Nine Hundred Fifteen and 79/100 Dollars ($317,915.79), including interest at 7.75% per annum.

**Exhibit 2**.

54.    Defendant ORLANS is sending out collection letters and notices created by eVantage with the lawyer letterhead and threats to foreclose on behalf of the Creditor bank in violation of § 445.252(a) from *a debt collector* and signed by the Orlans PC law firm. Given also the information added to the Public Notice at **Exhibit 2** beyond the Michigan Foreclosure Statute, clearly both **Exhibit 1 and Exhibit 2** were created in violation of the MOC, FDCPA and RCPA.

55.    The legal threat of the eVantage letters and public notices imply a heightened severity with the mention of law firms and attorneys from debt collectors so that the least sophisticated consumer would react with a commensurate level of alarm and concern when receiving these debt collection communications.

56.    In the letters received by Consumers from Orlans, they state to call for a Reinstatement Amount at **Exhibit 1**:

> You may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and all other appropriate costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (248) 502-1400.
>
> **Any right you may have to reinstate your Mortgage Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the following page.**

57.    The letters and communications from Orlans also state that the consumer will be charged extra fees, cost and charges if paid at a later date at **Exhibit 1**:

> 2.    Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above.  Please contact Fifth Third Bank or Orlans PC at (248) 502-1400 to obtain an updated payoff amount.

58.    The letter at **Exhibit 1** also states that the amount owed is the full amount on the Mortgage with no amount listed as to the Reinstatement amount in that you must call for that amount:

1. The amount of debt as of July 27, 2017 is $317,915.79.

2. Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Fifth Third Bank or Orlans PC at (248) 502-1400 to obtain an updated payoff amount.

59.     Yet, when a consumer contacts the phone number provided by Orlans, the debt collector/law firm refuses to supply a reinstatement amount that Orlans invited the consumer to call and seek to make a reinstatement payment. Here, Mr. Schaller called Orlans three times and each time Orlans refused to supply the promised amount. Please see Plaintiff's Affidavit at Exhibit

60.     Mr. Schaller also sent out a validation/verification request to Defendant on invitation by the Orlans through the letter at Exhibit 1. Please see the Verification request at **Exhibit 7**.

61.     To this date, Defendant has still not verified the debt or provided the promised reinstatement amount. Please see Mr. Schaller's Affidavit at **Exhibit 6**.

62.     Defendant has a policy and practice of representing to homeowners that it will respond to requests for validation and verification of debts and to inquiries for reinstatement in its collection letters but ignoring those same requests.

63.     The Sheriff Sale on the Schaller Home is scheduled for September 19, 2017 even though Defendant Orlans has not responded to the written validation request or reinstatement demand.

64.     *Glazer* held that, "In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) *or compulsion* (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." See *Glazer at 461. (emphasis added).*

65.     The notice of sale is a debt collection communication made for the purpose of obtaining payment on the underlying debt." Please see **Exhibit 3** showing several Opinions upholding *Glazer*

that foreclosure and sheriff sales are debt communications under the FDCPA.

66.     The Public Notice at **Exhibit 2** that was provided to the Detroit Legal News by eVantage for Orlans P.C. is *false, deceptive and misleading* in that the consumer is led to believe that Defendants such as ORLANS can announce they are pursuing mortgage debt in default and place the private information of consumers in a very public notice under color of following the Michigan Foreclosure Statute when that is not true or the law.  The publication of private debt information here in **Exhibit 2** is done in violation of the FDCPA, MOC and RCPA.

67.     The Defendants' written communications in the forms attached are false, deceptive, and misleading in that these communications fail to follow the Mortgage/Security Instrument Applicable Law and Intent to Sale Provisions of the Plaintiff's Mortgage Contract while falsely maintaining to consumers and homeowner's alike that they are following the Michigan Foreclosure Statute in violating the FDCPA, MOC and RCPA.

68.     Defendant Orlans is not following applicable federal or state law in posting the Public Notice at **Exhibit 2** and publicizing Mr. Schaller's private debt information in newspapers, in public places and on the internet in violation of the MOC and RCPA.

69.     The language in **Exhibit 1** and **Exhibit 2** is part of a computer generated, mass produced communications created for Orlans P.C. by eVantage and sent to homeowners facing foreclosure by ORLANS and unsigned and with a threat by an attorney law firm without any meaningful involvement by any attorney in violation of 15 U.S.C. §§ 1692e (3) and 15 U.S.C. §§ 1692e (10).

70.     Further, Plaintiff understood the Letter upon receiving it, as would the least sophisticated consumer, that the Defendant was either seeking the unpaid principle balance or a debt amount to reinstate the debt ***with an amount that was not stated*** in the collection notice to Plaintiff.

71.    Regarding the amount to Reinstate the Mortgage Loan, the letter stated, "You may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (248) 502-1400." **See Exhibit 1**.

72.    That the letter did not state the amount to reinstate to the Mortgage Loan that Orlans was seeking as part of the collection of the debt and required to be stated under 15 U.S.C. §§ 1692g(a)(1) because the letters are created by "legal processors" or "foreclosure specialists" from eVantage for the law firm and there is no meaningful attorney involvement or file review by an attorney. **See Exhibit 1**.

73.    The Defendant's written communications in the forms attached at **Exhibit 1** are false, deceptive, and misleading in that Orlans is refusing to provide the information it states in the letters. The Defendant's written communications in the forms attached at **Exhibit 1** are false, deceptive, and misleading in that the letters specifically request the consumer to verify the debt in writing or call for the reinstatement amount and when the consumer does as requested, Orlans does not provided the requested information. Please see Plaintiff's Affidavit at **Exhibit 6**.

74.    In *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014), the Sixth Circuit expanded the requirement for how a debt collector must respond to a debtor's request for verification of a debt under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (FDCPA).  Orlans has not provided anything in violation of the FDCPA and MOC at MCL 339.918.

75.    Defendant's refusal to validate and verify the debt is a violation of the FDCPA, 15 U.S.C. §1692g(b) in that Defendant is continuing to collect upon the debt through the Sheriff Sale on September 19, 2017 without first proving the amount owed is verified first.

76.    In *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), the Seventh Circuit held that "[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." Id. at 566. One way to comply with the FDCPA, the court of appeals suggested, would be to itemize the various charges that comprise the total amount of the debt. Id. at 566; see also *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 607 (E.D. Pa. 2006).

77.    If the debt collector is attempting to collect the past due portion of an unaccelerated debt, the "amount of the debt" is the past due portion, not the whole debt. *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838 (7th Cir. 2007); *Castro v. Green Tree Servicing*, 10cv7211, 2013 WL 4105196 (S.D.N.Y., Aug. 14, 2013); *Adlam v. FMS, Inc.*, 09 Civ. 9129, 2010,WL 1328958 (S.D.N.Y., April 5, 2010). As the Mortgage has not gone to foreclosure, the amount to be collected by Orlans is the reinstatement amount and costs and expenses yet Orlans does not provide that amount in its letters at **Exhibit 1**.

78.    The FDCPA, 15 U.S.C. §1692g(a)(1) requires disclosure of the "amount of the debt that is owed." What is missing from that language is any mention of court costs, attorney's fees, or other penalties which may be imposed by statute. That is because the "amount of the debt" provision is designed to inform the debtor (who, remember, has a low level of sophistication) of what the obligation is, not what the final, worst-case scenario could be. *Veach v. Sheeks*, 316 F. 3d 690 - Court of Appeals, 7th Circuit 2003. As the Mortgage has not gone to foreclosure, the

amount to be collected by Orlans is the reinstatement amount and costs and expenses yet Orlans does not provide that amount in its letters at **Exhibit 1**.

79.     Contrary to *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438, 441 (6th Cir) and in violation of 15 U.S.C. §1692e, Defendant is making an inaccurate statement by stating the total amount Plaintiff would owe the Creditor and not the amount necessary to reinstate the debt to avoid foreclosure. **Please see Exhibit 1**.

80.     The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. The requirement is not satisfied *by listing a phone number*. What they certainly could do was to state the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent. We think the statute required this." *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872, 875, 876 (7th Cir.2000).

81.     The *Miller* court held that the notice violated Section 1692g(a)(1), which, as noted, requires debt collectors to state "the amount of the debt." The court reasoned that the unpaid principal balance was not the "debt" and that the statute requires that debt collectors state "the total amount due—interest and other charges as well as principal—on the date the [collection notice] was sent." *Id.* at 875-76. *Avila v. RIEXINGER & ASSOCIATES, LLC*, 817 F. 3d 72 - Court of Appeals, 2nd Circuit 2016.

82.     As the foreclosure had not occurred when Plaintiff class members receive this initial dunning letter, the debt collector that is requiring the class member to "reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure would not be also seeking the Mortgage Pay off of $317,915.79 as Orlans is stating in its collection letter at **Exhibit 1**.

83.    The Attachment at **Exhibit 1** stated that Plaintiff had to request validation of the debt amount in writing. Plaintiff sent Defendant Orlans a request that they validate the debt and send her the reinstatement and true amount owed. **Please see Exhibit 2**.  Defendant Orlans did not respond to the validation request.  Please see **Exhibit 6**.

84.    As part of the cost saving practices used by eVantage to do all of the legal and foreclosure paperwork for Orlans P.C., Plaintiff states that Orlans has a plan and practice of avoiding and not providing the reinstatement amounts it promises to supply or in responding to Verification requests so that it can quickly get to the Sheriff Sale it advertises in the community.

85.    Congress' intent in enacting § 1692g was to provide an alleged debtor with proper notice of the amount of the debt and the creditor who is pursuing the debtor to allow consumers to respond to the initial communication of a collection agency.  The Letter at **Exhibit 1** is crafted to avoid providing the amount of debt owed to the debt collector under the FDCPA and *Miller* to reinstate, does not specify the extra fees and costs the consumer must contact ORLANS about through a phone number and lists the to balance owed should the whole debt be owed after the foreclosure and failed reinstatement in the future. As the Mortgage has not gone to foreclosure, the amount to be collected by Orlans is the reinstatement amount and costs and expenses yet Orlans does not provide that amount in its letters at **Exhibit 1**.

86.    Plaintiff and class members receiving **Exhibit 1** are left confused and wondering what they owe, how much and to whom. Until the threatened foreclosure occurs or Plaintiff consumer fails to reinstate or make her payments, Plaintiff or any Michigan Consumer receiving this letter do not owe the total principal or balance to Defendants as listed in the letter at **Exhibit 1**.

87.     In violation of the FDCPA, MOC and RCPA, Defendants are seeking an unspecified amount of "costs and fees incurred in the foreclosure" when the foreclosure has not begun. **Please see Exhibit 1**.

88.     It is undisputed that **Exhibit 2** was communicated to the general public through numerous public mediums such as the Detroit Legal News, Oakland County buildings and the internet. The public was notified that the Schallers owed an amount of mortgage debt, that they were in default on the debt and that her house was being sold to pay the debt that ORLANS communicated in violation of 15 U.S.C. § 1692c(b).

89.     In violation of the FDCPA, MOC and RCPA, the private debt information of the homeowner like the Schallers is posted to public forums by eVantage for Orlans P.C. throughout the county in publicizing **Exhibit 2**.

90.     The Sixth Circuit in *Glazer* did not create a carve out or exception for the Notice of Mortgage Sale being anything but debt collection and part of the foreclosure process and as a subsequent communication, the Notice here at **Exhibit 2** was a violation of 1692e (11).

91.     As **Exhibit 3** is a debt collection communication meant to obtain the sale of the home to pay the underling debt, the FDCPA clearly prevails in any conflict with the Michigan State Foreclosure Statute. "A debt collector must comply with the FDCPA while complying with a state foreclosure law." *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998).

92.     Plaintiffs are informed and believe, and on that basis allege, that the Defendants have a policy and practice of using eVantage documents and employees to send consumers, such as Plaintiffs, computer-generated, mass-produced letters – in the form of the Orlans letter at **Exhibit 1** and Public Notices like **Exhibit 2**-- *without any meaningful attorney review or involvement* prior to the mailing of those letters in violation of 15 U.S.C. §§ 1692e (3).

93.    "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989). "A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989).

94.    If there was any meaningful involvement or oversight by an Attorney, **Exhibit 2** would have followed both the Michigan Foreclosure Statute, the FDCPA, MOC and the RCPA prior to publicizing that Plaintiff is in Default on a debt and that Attorneys are seeking to sell the home to pay the underlying debt.

95.    Further, the Defendants' written communications in the form attached as **Exhibit 1** are false, deceptive, and misleading in that these communications were neither drafted by, nor received any meaningful review or involvement from, a licensed attorney prior to the mailing of said letters in violation of 15 U.S.C. §§1692e and 1692e (3) and §§1692e (10).

96.    As the foreclosure has not occurred yet on July 27, 2017 the Defendant ORLANS P.C. was legally duty bound under 15 U.S.C. §1692g(a)(1) and *Miller* to state the Reinstatement Amount that Defendant is collecting *but not providing to the class member* with these mass produced letters produced by eVantage similar to **Exhibit 1** and under the FDCPA and *Miller*.

97.    The FDCPA's bona fide error defense at 15 U.S.C. § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collectors' incorrect interpretation of a legal requirement of the FDCPA.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1611-12 (2010).

## VI. CLASS ACTION ALLEGATIONS

98.    Plaintiff realleges the above pleadings.

99.     Plaintiff brings this lawsuit in two classes. Plaintiff and The Plaintiff Class Members tentatively define the first class as all persons in the State of Michigan who, during the six years (RCPA) and (MOC) prior to the filing of this complaint received collection letters from attorneys/debt collectors/Orlans at **Exhibit 1** and had their private debt information publicized in **Exhibit 2**. Plaintiff may subsequently redefine the class definition in light of discovery.

100.    Plaintiff and The Plaintiff Class Members tentatively define the second class as all persons in the State of Michigan who, during the one year (FDCPA) prior to the filing of this complaint who received collection letters from attorneys/debt collectors/Orlans at **Exhibit 1** and had their private debt information publicized in **Exhibit 2**.  Plaintiff may subsequently redefine the class definitions in light of discovery.

101.    There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with seeking to assess a unliquidated pre-filing interest rate/amount applied to debt they are attempting to collect upon via litigation which were not expressly authorized in the underlying contract, along with otherwise undefined "additional costs," both formulated without explanation or judicial review, represented actionable violations of the above-referenced statutory subsections.

102.    There are no individual questions, other than whether the class member received one of the offending letters or lawsuits, which can be determined by a ministerial inspection of the records and collection notes of Defendants.

103.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter. She is greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, he has retained counsel

experienced in litigating the FDCPA, RCPA and MOC, consumer advocacy and class claims. Neither Plaintiff nor their counsel has any interests, which might cause them to not vigorously pursue this claim.

104.   Plaintiff counsel will be seeking $350 hour in reasonable attorney fees and costs for the prosecution of this action. Please see two recent awards granted to Plaintiff counsel at $350 an hour and also the 2014 Economics of Legal Practice Attorney Income and Billing Rate Summary Report for attorneys in Oakland County at **Exhibit 8**.

105.   Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories.

106.   A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who sued by Defendants undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are small but illegal percentages of fees and costs. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

107.   There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.  The predominant questions are:

> a. Whether Defendant had a practice of placing Michigan Consumers' private debt information in Public Notices when advertising homes for sale to pay the underlying debt through Mortgage Sale Foreclosure Notices under the Michigan Foreclosure Statute but in violation of the MOC, FDCPA and RCPA.
> b. Was Orlans P.C. sending out collection notices on attorney letterheads and with notice that a law firm is communicating

with a debtor when they were also debt collectors and the communications were created by non-lawyers (eVantage) with no meaningful attorney review of the file or communications.
c.  Did Defendants violate the FDCPA, MOC and RCPA while collecting
Collecting class members debt and selling their homes.

108.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

**Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical.

**Commonality (Common Questions Predominate):** Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members.

**Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

**Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel has any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

**Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

109.    Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendants, who collect debts throughout the United States of America.

110.    Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that a determination that ORLAN's written communications, in the form attached as **<u>Exhibit 1 and 2</u>**, violate Federal and State law as stated above.

111.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

112.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to modify the class definition and/or certify a class only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

113.    Certification of each class also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class.

114.    Plaintiffs seek STATUTORY and ACTUAL Damages and Declaratory and Injunctive Relief from the Court Ordering that this practice of Defendants be stopped under the FDCPA, RCPA and the MOC.

## <u>VII. DEMAND FOR RELIEF AND INJUNCTION AGAINST ORLANS</u>

**Class 1- RCPA CLASS ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE RELIEF**

115.    Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.    Defendant violated MCLA 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using **Exhibit 1 and 2** as mentioned above;

b.    Defendant violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt at (**Exhibit 1 and 2**); and

c.    Defendant has violated MCLA 445.252(f) Misrepresenting in a communication with a debtor 1 or more of the following:

    (i)    The legal status of a legal action being taken or threatened.

    (ii)    The legal rights of the creditor or debtor at (**Exhibit 1 and 2**);

d.    Defendant has violated MCLA 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee or person who seeks to collect and advertise the selling of class members' homes in violation of the RCPA for six years through forms at **Exhibit 1** and **Exhibit 2**; and

e.    Defendant has violated MCLA 445.252(m) by bringing to public notice that Plaintiff class members are a debtor at **Exhibit 2**; and

f.    Defendant has violated MCLA 445.252(a) by communicating with debtors in a deceptive manner at **Exhibit 1 and 2**.

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.   Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful violation, pursuant to M.C.L. 445.257(2);

b.   Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but not limited to, a declaration that defendant's debt collection practices violated the RCPA, as well as an injunction, enjoining Defendant from using **Exhibit 1 and Exhibit 2** which violates Michigan law; and

c.   Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial sanction.

d.   Actual Damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to some false debt collection lawsuits.

**Class 2- MOC CLASS ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE RELIEF**

116.   Even if the person, corporation, entity or business such as Defendants is not required to be licensed under MCL 339.901 et seq. the MOC does require Defendant are subject to the "other requirements that regulate collection practices" under MCL 339.904(2). Defendants have violated the MOC and is collecting debts in Michigan without regulation and a license and has further violated the MOC, but are not necessarily limited to, the following:

a.   Defendants violated MCL 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt, using **Exhibit 1 and 2** as mentioned above;

b.   Defendants violated MCL 339.915(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made about collecting a debt at **Exhibit 1 and 2**; and

c.    Defendants have violated MCL 339.915(f) Misrepresenting in a communication with a debtor 1 or more of the following:

    (i)    The legal status of a legal action being taken or threatened.

    (ii)    The legal rights of the creditor or debtor at **Exhibit 1 and 2**; and

d.    Defendants have violated MCL 339.915(m) by using forms at **Exhibit 2** to bring to public notice that Plaintiff class members are debtors; and

e.    Defendants have violated MCL 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee that is not regulated by the MOC as alleged above; and

f.    Defendants have violated MCL 339.915(a) by communicating with a debtor in a misleading or deceptive manner such as the use of **Exhibit 1 and 2** as alleged above in creating the plan and scheme to collect on debts in violation of the law and the privacy rights of Plaintiff class members; and

g.    Defendants have violated MCL 339.915a(a) by listing the name of an attorney in a written or oral communication, collection letter, or publication such as *(***Exhibit 1 and 2***)*; and

h.    Defendant Orlans have violated MCL 339.915a(b) by furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another such as *(***Exhibit 1 and 2***)* including the involvement of attorneys, debt collectors and Orlans' s eVantage Department combined, all in the same letters and Public Notices; and

i.    The Defendant is violating MCL 339.915a(c) by having its attorneys, debt collectors and eVantage all sharing quarters or office space, or having a common waiting room with a

practicing attorney, collection agency, Loan Resolution Department or a lender (**Exhibit 1 and 2**); and

j.    Defendant Orlans has violated MCL 339.915a(g) by advertising selling the home of class members to force payment of the debt at **Exhibit 2**; and

k.    Defendant has have violated MCL 339.915a(f) by soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court as shown through the scheme and plan above and through **Exhibits 1 and 2**; and

l.    Defendant has violated MCL 339.918 by not responding to Plaintiff's demand for Validation and Verification of the debt and continuing to collect on the debt.

**Wherefore**, Plaintiff seeks judgment and INJUNCTIVE RELIEF against Defendants for:

a.    Actual damages and Statutory damages pursuant to M.C.L. 339.916(1). Triple Actual damages if the Court finds Defendants' scheme and plan alleged above as willful non-compliance. M.C.L. 339.916(2); and

b.    Equitable, declaratory and injunctive relief pursuant to M.C.L. 339.916(1) to stop the plan and scheme of defendants as alleged above using (**Exhibits 1 and 2**); and

c.    Reasonable attorney's fees and court cost pursuant to M.C.L.339.916(2) with judicial sanction and Injunctive Relief.

d.    Actual Damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to false debt collection lawsuits from defendants.

### Class 3-VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

117.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

118.    Defendant violated the FDCPA. Defendant's violation, with respect to its written

communications in the computerized format attached as **Exhibit 1 and 2** includes, but are not limited to, the following:

a.      Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

b.      Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

c.      Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. §1692e(2)(B)

d.      Using false representations and/or deceptive means of a meaningful involvement of an attorney and/or review of the client file to collect or attempt to collect any debt or to obtain information concerning a consumer using eVantage to create **Exhibit 1 and Exhibit 3** in violation of 15 U.S.C. § 1692e (3) and 15 U.S.C. § 1692e (10);

e.      Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f;

f.      Collecting amounts that are incidental to the principal obligation, which amounts are not expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692f, and 1692f(1);

g.      Failing to correctly state the amount of the debt owed in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a)(1); and

h.      Creating a letter from a law firm to collect a debt without any meaningful involvement in a letter from an attorney as evidenced by the fact that **Exhibit 1** would have the right amounts sought in the Notice of Debt and a Reinstatement amount to be collected on the same day the letter

is sent and detail why a debt amount represented as the Unpaid Balance has no detailed explanation. in violation of 15 U.S.C. § 1692e (3), 1692e(2)(A), and 1692g(a)(1); and

i.      Using private debt information to create a Foreclosure Sale Notice letter from a law firm to collect a debt without any meaningful involvement as evidenced by the fact that **Exhibit 2** would have the proper FDCPA mini Miranda notice under 15 U.S.C. § 1692e (11) and not publicize in the Sale Notice that attorneys are involved in a defaulted debt while seeking to sell a home to pay the underlying debt in violation of 15 U.S.C. § 1692e (3), 1692e(2)(A) 1692e (10) and 1692d (4); and

j.      Failing to respond to the Validation and Verification request of Plaintiff but continuing to collect upon the debt in violation of 1692g(b; and

k.      Failing to provide the Mini Miranda collection notice in violation of 15 U.S.C. §§ 1692e, (11) in **Exhibit 2**.


## VIII. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

September 12, 2017                  s/Brian P. Parker
                                   BRIAN P. PARKER (P48617)
                                   Attorney for Plaintiff SCHALLER and Class
                                   Members